UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 13-23074-CIV-MARTINEZ-GOODMAN

PAUL ALEXANDER WARREN,

 Plaintiff,

vs.

DELVISTA TOWERS CONDOMINIUM
ASSOCIATION, INC.,
HYMAN D. ZELCER,

 Defendants.
_____/

## ORDER DENYING DEFENDANT DELVISTA TOWERS CONDOMINIUM ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT

This CAUSE came before the Court upon Defendant Delvista Towers Condominium Association, Inc.'s Motion for Summary Judgment.[1] (D.E. No. 76). Defendant Delvista Towers Condominium Association, Inc., ("Delvista" or "Defendant") argues that Plaintiff Paul Alexander Warren's ("Plaintiff['s]") accommodation request under §§ 3601-19 of the Federal Fair Housing Act (the "FHA"), to modify Defendant's "no pet" policy is unreasonable because Plaintiff's animal is allegedly a restricted breed in Miami-Dade County. (D.E. No. 76); *see* 42 U.S.C. §§ 3601-19 (2012). Plaintiff has timely responded, asserting that the rulings and notices proffered by the United States Department of Housing of Urban Development ("HUD") prevent the application of breed restrictions to a request for a reasonable accommodation. (D.E. No. 86). Defendant has replied (D.E. No. 94).

---

[1] Defendant moves for summary judgment only as to Count I of Plaintiff's four-count First Amended Complaint. (D.E. No. 70). Count I alleges "Failure to Reasonably Accommodate Against Defendant Delvista Condominium Association, Inc." (D.E. No. 70 at 6). This Court, therefore, addresses that argument alone.

Additionally, the Court requested further briefing regarding the affect, if any, of 42 U.S.C. § 3615 on the Miami-Dade County ordinance relied upon by Defendant in its motion for summary judgment. The parties have timely filed their supplemental memoranda. (D.E. Nos. 129, 130). After careful consideration, this court denies Defendant's motion for summary judgment (D.E. No. 76) for the reasons set forth herein.

## I. Background

Delvista is a condominium association within Miami-Dade County, Florida. (D.E. No. 77 at 1). Plaintiff owns and resides in Delvista Towers Condominium, which has a "no pet" policy, with the exception of birds and fish. (D.E. No. 77 at 3). Plaintiff's psychiatrist, Dr. Robert Vassal, diagnosed Plaintiff with Severe Recurrent Major Depression Disorder and Post Traumatic Stress Disorder ("PTSD"). (D.E. No. 70-1 at 2). On June 12, 2013, Dr. Vassal "strongly recommended" to Delvista that it make a reasonable accommodation to its "no pet" policy pursuant to the Fair Housing Act (the "FHA"), allowing Plaintiff to live with his assistance animal, "Amir," because of the dog's therapeutic use and function. *Id.* Delvista also received a written letter from Plaintiff directly, explaining his disorder, attaching the letter from his psychiatrist, and requesting a reasonable accommodation to the "no pet" policy. (D.E. No. 70-2 at 3-4). On June 27, 2013, Delvista's legal counsel sent correspondence to Dr. Vassal and Plaintiff requesting additional information "to properly evaluate [Plaintiff's] claim that he requires a reasonable accommodation" and threatened Plaintiff with the possibility of a lawsuit if the information was not provided within ten days. (D.E. Nos. 70-3, 70-4). Thereafter, Plaintiff retained counsel who again petitioned for the accommodation on his behalf. (D.E. No. 70-5). To date, Delvista has failed to grant the accommodation, but Plaintiff continues to keep Amir in his dwelling. (D.E. No. 103 at 10, D.E. No. 104 at 8). In failing to grant the accommodation,

Delvista argues that the accommodation is *per se* unreasonable because Amir is allegedly a pit bull, and pit bull dogs are banned by ordinance in Miami-Dade County (D.E. No. 77 at 2).

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(a), "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248. In addition, when considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Id.* at 255.

If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment. *See U.S. v. Four Parcels of Real Prop. in Greene & Tuscaloosa Counties*, 941 F.2d 1428, 1438 (11th Cir. 1991). The moving party "'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s]

forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Four Parcels*, 941 F.2d at 1438 (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)).

By contrast, if the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense. *Celotex Corp.*, 477 U.S. at 324. When the non-moving party bears the burden of proof, the moving party does not have to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Id.* at 323 (emphasis in original). The moving party may discharge its burden in this situation by showing the Court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 324. Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite "to particular parts of materials in the record" or show "that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

**III.  Analysis**

To prevail on a failure to accommodate claim pursuant to Section 3604(f)(3)(B) of the FHA, Plaintiff "must establish that (1) he is disabled or handicapped within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the requested accommodation." *Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 F. App'x 464, 467 (11th Cir. 2009) (quoting *Schwartz v. City of Treasure Island*, 544 F.3d 1201, 1218-19 (11th Cir. 2008)). Defendant concedes for purposes of its motion that Plaintiff has met

all requirements for making a reasonable accommodation.[2] Defendant only challenges that Plaintiff's request for an accommodation is unreasonable. (D.E. No. 76 at 6). Thus, this Court will focus on whether Plaintiff's request is reasonable.

The FHA defines a discriminatory housing practice as any "act that is unlawful under section 3604, 3605, 3606, 3617 of this title." 42 U.S.C. § 3602(f). Plaintiff has brought this action alleging that Defendant failed to make a "reasonable accommodation" under Section 3604 of the FHA. (D.E. No. 70); *see* 42 U.S.C. § 3604(f)(3)(B). Defendant argues that the requested accommodation is unreasonable because a Miami-Dade County ordinance bans Amir's alleged breed – pit bull. (D.E. No. 117 at 11); *see also* Miami-Dade County, Fla., ch.5-17, § 89-22 (effective April 4, 1989).

The first question that must be answered is whether an emotional support dog, such as the role that Amir allegedly fulfills for Plaintiff, is a reasonable accommodation under the FHA. Section 3604(f)(3)(B) of the FHA indicates that discrimination includes: "A refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodation may be necessary to afford such person equal opportunity to use and enjoy a dwelling." Although the FHA does not define a "reasonable accommodation," the Eleventh Circuit has held that an accommodation is *unreasonable* if "(1) it would impose an undue financial and administrative burden on the housing provider or (2) it would fundamentally alter the nature of the provider's operations." *Schwartz*, 544 F.3d at 1220. Further, under the FHA, the Secretary of HUD shall have "the authority and responsibility for administering this Act." § 3608(a). Such authority includes "[M]ak[ing] such rules and regulations as may be necessary to carry out his

---

[2] "For the sole purposes of this Motion, the Defendants will accept as true that Plaintiff has a qualifying disability and has fulfilled all necessary prerequisites to making a request for a reasonable accommodation required under law." (D.E. No. 76 at 6).

functions, powers and duties." § 3535(d). Specifically, the FHA authorizes the Secretary to "make rules . . . to carry out this subchapter." 42 U.S.C. § 3614a. In exercising that authority, the Secretary has promulgated 24 C.F.R. § 100.204, which provides two examples of situations where an accommodation has been found to be reasonable. § 100.204(b). Example one illustrates that a building with a "no pets" policy must accommodate a blind person and his seeing eye dog otherwise "the blind person will not have an equal opportunity to use and enjoy a dwelling." *Id.* The example specifically demonstrates that an alteration in a "no pet" policy building to allow for an assistance animal is a reasonable accommodation. *See Sabal Palm Condos. of Pine Island Ridge Ass'n, Inc. v. Fischer*, No. 12-60691-Civ, 2014 WL 1092361, at *8 (S.D. Fla. Mar. 19, 2014) ("Because an essential element of both § 3604(f)(3)(B) and § 100.204(a) is that the accommodation be reasonable, it follows that allowing a disabled person to keep a dog in a housing unit with a no-pets policy is a reasonable accommodation."). Defendants do not allege that allowing Plaintiff to have an assistance animal would (1) impose an undue burden on the housing provider nor (2) fundamentally alter the nature of the provider's operations. *See Schwartz*, 544 F.3d at 1220. Therefore, this Court holds that an emotional support animal as defined by the FHA is a reasonable accommodation.[3]

This Court must next address whether allowing Plaintiff to keep "Amir" – the specific animal at issue in this case – in his dwelling, is a reasonable accommodation. Plaintiff's request to live with Amir stems from the emotional support that Amir allegedly provides Plaintiff in

---

[3] The FHA defines an assistance animal as "An animal that works, provides assistance, or performs tasks for the benefit of a person with a disability, or provides emotional support that alleviates one or more identified symptoms or effects of a person's disability." U.S. Dep't of Hous. and Urban Dev., *Service Animals and Assistance Animals for People with Disabilities in Housing and HUD-funded Programs*, http://www.fairhousingnc.org/wp-content/uploads/2013/05/HUD-FHEO-2013-01-Service-Animals-and-Assistance-Animals-PWD-in-Housing-and-HUD-funded-programs.pdf (last visited June 25, 2014) (the "HUD Notice," at 2).

alleviating his symptoms of PTSD and severe Major Recurrent Depressive Disorder. Defendant argues that Amir is a pit bull – a breed specifically banned by Miami-Dade County law – and, therefore, *per se* unreasonable (D.E. No. 76 at 6).

HUD issued a final rule in 2008 pursuant to 42 U.S.C. § 3614a providing that accommodations to allow an emotional support animal are generally reasonable and that emotional support animals do not require task specific training. Particularly, the rule states:

> emotional support animals provide very private functions for persons with mental and emotional disabilities. Specifically, emotional support animals by their very nature, and without training, may relieve depression and anxiety, and help reduce stress-induced pain in persons with certain medical conditions affected by stress.

*Pet Ownership for the Elderly and Persons With Disabilities*, 73 FR 63834-01. In light of the HUD rule, it is of no moment whether Amir is specially trained. The HUD rulings and notices make clear that an emotional support animal need not be specifically trained because the symptoms the animal ameliorates are mental and emotional, rather than physical. Although the final rule was issued in regards to HUD-assisted public housing and multifamily housing projects, the rationale is equally persuasive in this instance[4]. *See Overlook Mut. Homes, Inc. v. Spencer*, 666 F. Supp. 2d 859, 860 (S.D. Ohio 2009) *aff'd on other grounds*, *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 617 (6th Cir. 2011).

In addition to denying reasonable accommodations based on an undue administrative burden or a fundamental alteration to the nature of operations, HUD also allows for the denial of a reasonable accommodation in the form of an assistance animal if the "animal's behavior poses a direct threat and its owner takes no effective action to control the animal's behavior so that the

---

[4] The FHA covers all dwellings "except as exempted by subsection (b) of this section." 42. U.S.C. § 3603.

threat is mitigated or eliminated." *See Schwartz*, 544 F.3d at 1220. Further, the presumption in favor of a reasonable accommodation is such that "the Fair Housing Act requires the existence of a significant risk – not a remote or speculative risk." *Id.* at 63837. Particularly, HUD promulgated a notice stating that a request to accommodate an assistance animal can be denied if "(1) the specific assistance animal in question poses a direct threat to the health or safety of others that cannot be reduced or eliminated by *another* reasonable accommodation, or (2) the specific assistance animal in question would cause substantial physical damage to the property of others that cannot be reduced or eliminated by *another* reasonable accommodation."[5] HUD Notice at 3 (alterations in original omitted) (emphasis added). Of note is HUD's emphasis on an assessment of "the specific assistance animal in question." Accordingly, determining whether Amir poses a direct threat that cannot be mitigated by another reasonable accommodations is not a question of law, it is distinctly a question of fact. As such, it is inappropriate for the Court to decide this issue.

Finally, this Court must address whether the Miami-Dade County ordinance banning pit bull dogs makes Plaintiff's request unreasonable *per se*; Defendant contends that it does. (D.E. No. 76 at 6). Plaintiff argues that the HUD Notice prevents the application of any breed, height, and weight restrictions to assistance animals. (D.E. No. 86 at 5). Plaintiff's prescribed emotional support animal is allegedly a banned breed in Miami-Dade County. As discussed *supra*, the FHA, through HUD, has issued several rules and notices discussing the presumption of assistance animals and the circumstances under which a denial is warranted. Thus, this Court must address whether the County ordinance is preempted by the FHA.

---

[5] This Court has previously noted in this case that it finds HUD notices persuasive in its Omnibus Order Granting in Part and Denying in Part Plaintiff's Motions to Strike Defendants' Affirmative Defenses to Plaintiff's First Amended Complaint. (D.E. No. 117)

State laws that "interfere with, or are contrary to the laws of congress, made in pursuance of the constitution" are invalid. *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991) (citing *Gibbons v. Ogden*, 9 Wheat. 1, 211 (1824)); *see also* U.S. Const. Art. VI, cl. 2. In evaluating whether federal law trumps state law in a particular field, the court begins with the presumption that "the historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *Jones v. Rath Packing Co.*, 430 U.S. 519, 523 (1977) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947) (quotations omitted)). In determining whether a state law is preempted by a federal statute the court's task is to ascertain "whether under the circumstances of this particular case, (the State's) law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)) (alterations in original).

Section 3615 of the FHA provides:

> Nothing in this subchapter shall be construed to invalidate or limit any law of a State or political subdivision of a State, or of any other jurisdiction in which this subchapter shall be effective, that grants, guarantees, or protects the same rights as are granted by this subchapter; *but any law of a state, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid.*

42 U.S.C. § 3615 (2012) (emphasis added). In enacting the FHA, Congress intended to provide equal housing opportunities for disabled persons. *See* H.R. Rep. No. 100-711, at 13 (1988). An example of compliance with the statute, as already discussed, includes the alteration of a building's "no pet" policy to accommodate a blind person and his seeing eye dog. *See* 24 C.F.R. § 100.204(b). Without the accommodation, "the blind person will not have an *equal opportunity*

*to use and enjoy a dwelling*," as a person without a disability would have. *Id.* (emphasis added). Thus, the "clear and manifest purpose of Congress" was to provide disabled individuals with equal use and enjoyment of their dwelling. *Jones*, 430 U.S. at 523.

The First Circuit Court of Appeals addressed the issue of FHA preemption through a condominium law in Puerto Rico. *See Astralis Condo. Ass'n v. Sec., U.S. Dep't Hous. and Urban Dev.*, 620 F.3d 62, 64 (1st Cir. 2010). There, an elderly couple who resided within a unit in Astralis Condominiums ("Astralis") had two parking spaces approximately 230 feet from the building's entrance. *Id.* Astralis had several unassigned parking spaces, including ten handicap spaces that were deemed "common elements," and located forty-five feet from the condominium's entrance. *Id.* These spaces were to be utilized on a first-come, first-served basis. *Id.* The couple received handicap permits due to their physical limitations, and requested that Astralis make an accommodation by permanently assigning them two of the ten handicap spaces. *Id.* Astralis denied the request, relying in part on a condominium law which required the consent of all the condominium unit owners before transferring common elements. *Id.* at 69. The Court held that Section 3615 of the FHA preempts any law which permits a discriminatory housing practice. Additionally, the court found that Puerto Rico's condominium law permitted Astralis to deny an otherwise reasonable accommodation under the FHA. *Id.* at 70. Although Congress did not have any intention to occupy the field of Puerto Rico's condominium law, it intended to preempt any law that prevents the FHA from achieving its purpose of providing equal housing opportunities to disabled individuals.

In the present case, if the County ordinance were enforced it would violate the FHA by permitting a discriminatory housing practice. In failing to grant Plaintiff's request to live with his assistance animal because of the dog's alleged breed, Plaintiff is not afforded "an equal

opportunity to use and enjoy [his] dwelling." 24 C.F.R. § 100.204(b). Thus, the breed ban "stands as an obstacle" to the objectives of Congress in enacting the FHA, by allowing a condominium complex to prevent equal opportunities in housing based on the breed of a dog. *Jones*, 430 U.S. at 523. Accordingly, as a matter of law, the Miami-Dade County ordinance is preempted by the FHA in this context. For purposes of Defendant's motion, although Amir's breed is disputed, it is immaterial to this case due to the FHA's preemption of the ordinance. Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any *material* fact . . . .") (emphasis added).

As discussed previously, if Amir were alleged to be any other breed, a reasonable accommodation would include an alteration to the "no pet" policy to allow the assistance animal as long as Amir did not pose a direct threat that could not be mitigated through other reasonable accommodations. *See* HUD Notice at 3. The only remaining genuine issue of material fact as to Count I, therefore, is whether Amir poses a direct threat to members of the condominium association, and whether that threat can be reduced by other reasonable accommodations.

## IV.  Conclusion

After careful consideration, and for the reasons state herein, it is hereby:

**ORDERED and ADJUDGED** that Defendant's Motion for Summary Judgment (D.E. No. 76) is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this 29th day of July, 2014.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Goodman
All Counsel of Record